UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SYNERGY RESTAURANT GROUP, LLC )<br>d/b/a RALLY'S, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NATIONWIDE MUTUAL INSURANCE )<br>COMPANY and ALLIED INSURANCE )<br>COMPANY OF AMERICA, )<br>)<br>Defendants. ) | Cause No. 1:20-CV-190-HAB |

**OPINION AND ORDER**

Rally's does not use an open flame to cook its burgers. Its customers and employees, on the other hand, do use open flames to light cigarettes. One such cigarette caused significant fire damage to the Rally's in this case. Now, the owners of the restaurant, Plaintiff, and the insurers of the restaurant, Defendants, are at odds over the amounts recoverable under the policy insuring the restaurant. Defendants have moved for summary judgment on all claims raised by Plaintiff. (ECF No. 30). That motion is fully briefed (ECF Nos. 31, 36, 39) and ripe for ruling.

**I.     Factual Background**

The Rally's fire occurred on June 7, 2019. The restaurant was insured by Allied Insurance Company of America ("Allied"), an affiliate of Nationwide Mutual Insurance Company ("Nationwide") (collectively "Defendants"), under policy number ACP BPFL 3018571932 ("Policy"). Plaintiff reported the fire to Defendants the next day. A cause and origin report found that the fire was most likely caused by a discarded cigarette near the drive thru.

Jason Stein ("Stein") was the claims adjuster assigned by Defendants to the fire claim. Plaintiff hired Lawrence Building Corporation ("LBC") as its general contractor for the fire

repairs. Plaintiff first retained engineering firm Shambaugh & Son, LP ("Shambaugh") to perform electrical repairs, but later decided to have a different company, Mr. Electric, perform those repairs. Stein retained structural engineering firm EFI Global, Inc. ("EFI") to provide technical drawings for the repairs.

Shambaugh performed its initial walkthrough inspection of the site within three weeks of the fire and issued a report. That inspection found "a multitude of electrical hazards." (ECF No. 31-6 at 3). Most of the identified hazards do not appear to be related to the fire, including grease build-up on electrical components, loose and exposed fixtures, and components that were rusted, cracked, and exposed. Because of these concerns, Shambaugh did not do an inspection of the building's wiring or pull permits to perform any fire-related repairs. Instead, it suggested a full rewire of the restaurant. Shambaugh also suggested that the local building and health departments be called in to provide reports.

Mr. Electric issued a similar report (ECF No. 36-25) within days of the Shambaugh report. Mr. Electric reported generally the same issues with the restaurant's electrical system and recommended a full rewire.

The parties dispute when these reports were provided to Defendants. Adam Webster ("Webster"), LBC's project manager, testified in his deposition that both reports were provided to Stein when they were received and that he discussed the Shambaugh report with Stein during a phone call. On the other hand, Stein has submitted an affidavit stating that the reports were not provided to him until three and a half months after they were issued.

In early August 2019, Webster emailed Stein providing an update on the repairs. Part of that update was a report on an inspection conducted by the local building inspector. The inspector had "serious concerns about the safety of the electrical system." (ECF No. 36-20 at 1). Webster

2

reported that, for the inspector to sign off on the final repairs, "we are going to have to update the electrical in the facility all the way from including the panels to each device or outlet." (*Id*.).

Four days later, Webster sent Stein another update email. Webster stated that he was "still awaiting the electrical pricing." (ECF No. 36-26 at 1). Webster also noted that Stein's initial repair estimate "doesn't match what ERI has drawn in regards to material and such," and asked that Stein update the estimate. (*Id*.).

Electrical pricing in hand, Webster sent a full repair quote to Stein on August 15, 2019. The quote was for repairs "per ERI's Drawings [sic] and also requirements set forth by the City of Fort Wayne." (ECF No. 36-1 at 1). Webster stated that the quote was broken down "as typical for [Stein's] review," and asked Stein to let him know if there were questions. (*Id*.). The total amount for the repairs was quoted at $228,008.45, with $74,627.20 allocated for electrical repairs. (*Id*. at 2). Webster provided Stein a two-page scope of work from Mr. Electric detailing the electrical repairs to be performed. (*Id*. at 3–4).

One week after receiving LBC's quote, Stein hired Envista to review the quote and inspect the electrical system at the restaurant. He also called Plaintiff to discuss the quote and arrange for the inspection. During that phone call, Stein was told by Jeremy Wannamacher ("Wannamacher"), Plaintiff's operations manager, that the old wiring had been removed and discarded, leaving nothing to inspect.

Work went on to repair the restaurant over the next several weeks. But by late September 2019, the contractors working on the repairs had not been paid. Plaintiff's representatives contacted Stein about the nonpayment. During these conversations, Stein admitted that he had missed the scope of work from Mr. Electric and asked that it be re-sent. Stein apologized for the mix-up and committed to settling the claim as soon as possible.

3

Stein states in his affidavit that he had spent this time investigating the electrical issue and other items in LBC's quote. As part of that investigation, Stein was provided (for the first time according to him) with the Shambaugh report in early October 2019. Stein then spoke with an electrical inspector from the Allen County Building Department who had inspected the building. That inspector has submitted an affidavit stating that he has no opinion about what, if any, damage to the electrical system was caused by the fire.

Stein issued an updated estimate for the repairs at the end of October 2019. That estimate did not include the electrical repairs because they were not approved by Defendants. Stein spoke with a representative of Plaintiff the same day to explain why the electrical repairs were not covered. Defendants closed their file on the fire loss in December 2019, having paid $246,246.73. The file was briefly reopened in April 2020, with Stein approving another payment of $18,456.21 after more documentation was provided by Plaintiff's attorney.

Plaintiff claims that $135,194.63 remains outstanding for covered losses. The number represents the total unpaid repairs from LBC's quote, minus the $18,456.21 paid by Defendants after litigation had begun.

**II.     Legal Discussion**

**A.     *Summary Judgment Standard***

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of designated evidence that show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts

showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

**B.**     **Breach of Contract**

**1.**     *Plaintiff's claim is not barred by the Legal Action Against Us provision in the Policy.*

The easiest argument to address is Defendants' second. The Policy has a common provision that prohibits an insured from suing the insurer until "[t]here has been full compliance with all of the terms of this insurance." (ECF No. 9-1 at 106). A separate provision of the Policy, setting forth the insured's duties in the event of loss, requires prompt notice of the loss and gives the insurer the right to inspect the property. (*Id.* at 105). Defendants allege that Plaintiff violated the second provision by failing to give prompt notice of the need to replace the entire electrical system and by removing all wiring before an inspection, thus barring suit under the first provision.

Indiana law is clear that the duty to notify is a condition precedent to an insurance company's liability to its insured. *Miller v. Dilts*, 463 N.E.2d 257, 260-61 (Ind. 1984).

5

> The requirement of prompt notice gives the insurer an opportunity to make a timely and adequate investigation of all the circumstances surrounding the accident or loss. This adequate investigation is often frustrated by a delayed notice. Prejudice to the insurance company's ability to prepare an adequate defense can therefore be presumed by an unreasonable delay in notifying the company about the accident or about the filing of the lawsuit.

*Id.* at 265. So, if Plaintiff failed to give timely prompt notice of the loss, then Defendants' motion is well-taken.

The problem for Defendants is two-fold. First, Defendant argues for a far more expansive reading of the notification provision than its language supports. By its terms, the Policy requires that the insured give "prompt notice of the **loss** or damage." (ECF No. 9-1 at 105) (emphasis added). The Court interprets this provision as requiring notice of the event potentially triggering coverage, in this case the fire. *USA Life One Ins. Co. of Ind. v. Nuckolls*, 682 N.E.2d 534, 538 (Ind. 1997) ("If the language in the insurance policy is clear and unambiguous, then it should be given its plain and ordinary meaning."). This interpretation is supported by the authorities Defendants rely on. *See Miller*, 463 N.E.2d at 266 (in consolidated cases, insurers received notice six months, one month, and seven months after the subject accidents); *Tri-Etch, Inc. v. Cincinnati Ins. Co.*, 909 N.E.2d 997, 999 (Ind. 2009) (insured received notice more than four years after suit was filed). These cases do not support a broader reading of the Policy that would require notice of every aspect of the loss.

Given this interpretation of the Policy, Defendants' argument must fail. Plaintiff reported the fire the next day. Stein inspected the property within a week of the fire, and EFI, Stein's retained engineer, inspected the property within two weeks of the fire. Plaintiff's notice of the fire was plainly "prompt," and Defendants do not argue otherwise.

Defendants' second problem is that, under their reading of the Policy, genuine issues of material fact exist. Assuming the Policy required Plaintiff to promptly notify Defendants of the

6

issues with the electrical system separately, Webster testified under oath that he sent the Shambaugh and Mr. Electric reports to Stein when Webster received them. Stein denies this, but that denial does little more than create a genuine issue of material fact for a jury to decide. And it is undisputed that Webster promptly informed Stein of the building inspector's opinion that the electrical system needed to be replaced, and that he further promptly informed Stein of Mr. Electric's quote to perform the repairs. Given these facts, there is no basis to grant summary judgment on notification grounds, and Defendant's reliance on the Legal Action Against Us provision is rejected.

**2.**  *Genuine issues of material fact preclude summary judgment on Plaintiff's claims for additional coverage.*

Defendants' primary argument is that Plaintiff has failed to designate evidence showing that the claimed outstanding expenses are covered by the Policy. They first assert that there is no evidence that damage to the electrical system was "caused by or resulting from" the fire. Second, Defendants assert that they have "still not received any specific information supporting Plaintiff's position that the expenses were necessary to complete repairs." (ECF No. 31 at 18). The Court will address each assertion in turn.

As for the electrical system, Defendants note that both the Shambaugh and Mr. Electric reports identify problems with the electrical system that pre-date the fire. Defendants also point to the testimony of Plaintiff's representatives, deferring any determination on the scope of fire damage to qualified electricians. Because Plaintiff has not designated the testimony of an electrical expert, the argument goes, Plaintiff cannot prove that any damage to the electrical system was caused by the fire.

In support of their position, Defendants rely on *Ports of Ind. v. Lexington Ins. Co.*, 2011 WL 5523419 (S.D. Ind. Nov. 14, 2011). There, a section of a Lake Michigan dock wall suffered

visible damage. Subsequent investigation of the rest of the dock wall revealed further damage. The owner of the dock wall made a claim for the damage to its insurance carrier. The insurer agreed to pay for repairs to the visible damage, but not to repair the remaining issues. The owner sued and moved for summary judgment seeking a declaration of coverage.

Defendants assert that the Southern District "grant[ed] summary judgment in a case with an equivalent policy provision where plaintiff sought damages for replacing an entire boat dock after storm damage, but only one wall section of the dock was damaged by the storm." (ECF No. 39 at 3). This assertion is wrong. The Southern District did conclude that the duty was on the insured to "prove that there was direct physical loss or damage to *every area of the dock that Ports is having repaired* and for which it seeks recovery under the policy." *Ports*, 2011 WL 5523419, at *9 (original emphasis). Yet the court later decided that "how much of the dock suffered 'direct physical loss or damage' as a result of the 'perfect storm' of unexpected phenomena which Ports claims was visited upon the dock by mother nature" was "[t]he issue for a jury." *Id*. at *10. So, the insured's motion for summary judgment was *denied*. *Id*. at 11.[1] *Ports*, then, teaches that it is for a jury, not the Court, to decide whether claimed damage was caused by an insurable loss or some other non-insurable cause.

Of course, Plaintiff is only entitled to a jury trial if it can point to evidence showing that the fire caused *some* damage to the electrical system. Although the record is sparse, the Court finds that there is enough to take the case to a jury. On this point the Court finds the Shambaugh and Mr. Electric reports to be instructive. Defendants hammer the point that both reports found issues unrelated to the fire. This is true. But they also found issues that likely related to the fire. For instance, Shambaugh found that the "[e]lectrical panels show signs of overheating on busbars."

---

[1] The court did grant summary judgment for the insured on a separate issue; namely, that the claimed damage resulted from a single occurrence. *Id*. at *13. That determination does not affect the issues before the Court.

(ECF No. 31-3 at 10). Overheating could be caused by a fire. Similarly, the Mr. Electric report found smoke damage to the "feeder cable" and "overheating" to "receptacles throughout the facility." (ECF No. 36-25 at 1). Both reports, then, can be interpreted as finding fire damage besides pre-existing conditions.

The Court also notes that Stein's estimates consistently provided for repairs to "light fixtures" and "electronics." (*See*, *e.g.*, ECF No. 31-2 at 41, 42). The amounts are trivial, but the fact that they appear on Stein's own estimates shows some damage to the electrical system resulting from the fire.

The Court also applies its common sense in making this determination. The designated evidence shows extensive fire damage to the south wall of the building. (*See* ECF No. 31-2 at 16–21). Electrical wiring was contained within that wall. (*Id*. at 19, Photo #8). Stein's retained engineer prepared structural drawings to replace the entire wall. (ECF No. 35-15). It simply beggars belief that this kind of damage could occur to a wall without damage to the wiring contained in it.

The Court concedes that Plaintiff's evidence is not strong. Many of Plaintiff's witnesses have painted themselves into corners by expressly denying knowledge of the extent of the fire damage. (*See*, *e.g.*, ECF No. 39-2 at 4). But recognizing the weakness in evidence is very different from finding the absence of evidence. Because Plaintiff has designated evidence of some fire damage to the electrical system, it must be allowed to present that evidence to a jury.

Resolution of Defendants' motion related to non-electrical repairs is easily dealt with. Simply put, inadequate documentation of repair costs is not a basis for summary judgment. Indeed, federal courts have repeatedly denied an insurer's motion for summary judgment where little, and sometimes no, documentary proof was provided to support claimed repairs. *See Dewey St. Church*

*of Christ v. Church Mut. Ins. Co.*, 2:19-CV-12-KS-MTP, 2020 WL 7133003 (S. D. Miss. Dec. 4, 2020); *Savanna Grove Coach Homeowners' Ass'n v. Auto-Owners Ins. Co.*, 19-CV-1513, 2020 WL 468905 (D. Minn. Jan. 29, 2020); *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 708 F. Supp. 3d 543 (E.D. Mich. 2015); *Michel Fam. Tr. v. Travelers Indem. Co. of Conn.*, No. C 09-4144 PSG, 2011 WL 207955 (N.D. Cal. Jan. 21, 2011).

Plaintiff has provided Defendants with the documentation it has to support the disputed expenses. (ECF No. 36-13). Defendants may not like the documents they received, but that displeasure is not a dispositive issue. Instead, a jury will need to decide whether Plaintiff has proven that the expenses were necessary for the repair of the fire damage. This is true for *all* claimed expenses.[2] Defendants' motion for summary judgment on the breach of contract claim will be denied.

**C.     Bad Faith**

Under Indiana law, an insurer has a duty to deal with its insured in good faith, and there is a cause of action for the tortious breach of that duty. *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1993); *see also Cnty. Line Towing, Inc. v. Cincinnati Ins. Co.*, 714 N.E.2d 285, 291 (Ind. Ct. App. 1999). "The insurer's obligation of good faith and fair dealing includes an obligation to refrain from causing an unfounded delay in making payment; making an unfounded refusal to pay policy proceeds; exercising an unfair advantage to pressure an insured into settlement of his claim; and deceiving the insured." *Cnty. Line Towing, Inc.*, 714 N.E.2d at 291. Thus, an insured who believes an insurance claim has been wrongly denied may have two distinct legal theories

---

[2] Defendants specifically call out a nearly $23,000.00 "loan" from LBC to Plaintiff which, according to email communications, would be repayable if Plaintiff recovered from Defendants. But the Court finds Webster's testimony about the "loan" to be ambiguous, particularly as to what amounts the loan represented and whether it was paid. (ECF No. 39-2 at 20). In any event, it will be Plaintiff's burden at trial to prove that this amount is recoverable under the Policy.

available, one for breach of the insurance contract and one in tort for the breach of the duty of good faith and fair dealing. *Id*. These two theories have separate, although often overlapping, elements, defenses, and recoveries. *Id*.

A good faith dispute about the amount of a valid claim or whether the insured has a valid claim will not supply the grounds for recovery in tort for the breach of the obligation to exercise good faith. *Becker v. American Fam. Ins. Grp.*, 697 N.E.2d 106, 108 (Ind. Ct. App. 1998). "This is so even if it is ultimately determined that the insured breached its contract. That insurance companies may, in good faith, dispute claims, has long been the rule in Indiana." *Id*. Additionally, "the lack of diligent investigation alone is not sufficient to support an award. On the other hand, for example, an insurer which denies liability knowing that there is no rational, principled basis for doing so has breached its duty." *Id*. Thus, poor judgment and negligence do not amount to bad faith; the added element of conscious wrongdoing must also be present. *Colley v. Indiana Farmers Mut. Ins. Group*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998). "A finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Id*. Thus, a bad-faith determination inherently includes an element of culpability. *Id*.

The Court agrees with Defendants that the evidence of the necessary culpability is missing from the record. Plaintiff points to two instances that it believes support a finding of bad faith. First, it points to Defendants' rejection of its documentation supporting the non-electrical repairs. (ECF No. 36 at 24). But, as noted above, the sufficiency of that documentation is a jury matter. The Court cannot conclude that Defendant's rejection of that documentation is anything more than a good faith dispute about the value of the claim. Such a dispute is not bad faith. *Hoosier Ins. Co. v. Audiology Found. of Am.*, 745 N.E.2d 300, 310 (Ind. Ct. App. 2001).

Plaintiff next points to the six-week delay between submitting the LBC quote and payments by Stein. (ECF No. 36 at 24-25). While this period does not cover Stein in glory, it is evidence of negligence at best. The record shows that, during this period, Stein was trying to gather information related to the electrical expenses specifically, even hiring a contractor to perform an inspection. And, when the nonpayment was brought to Stein's attention, he immediately admitted that he made a mistake in failing to review the Mr. Electric quote and worked to correct his mistake. There is simply no evidence on which the Court could conclude that Stein's nonpayment was anything but a mistake. But "[p]oor judgment and negligence do not amount to bad faith." *Indiana Ins. Co. v. Kopetsky*, 11 N.E.3d 508, 529 (Ind. Ct. App. 2014).

A jury may find that Defendants breached their contract, but nothing in the record would allow a finding of dishonest purpose, moral obliquity, furtive design, or ill will. Thus, Plaintiff's bad faith claim cannot proceed to trial.

### III. Conclusion

For these reasons, Defendants' motion for summary judgment (ECF No. 30) is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to Plaintiff's claim for bad faith. The motion is DENIED in all other respects.

SO ORDERED on April 14, 2022.

       s/ *Holly A. Brady*
       JUDGE HOLLY A. BRADY
       UNITED STATES DISTRICT COURT